UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

ROBERT ALLEN O'HAIR,                          )
                                              )
          Plaintiff,                          )        Civil Action No. 5: 15-97-DCR
                                              )
V.                                            )
                                              )
WINCHESTER POLICE                             )        **MEMORANDUM OPINION**
DEPARTMENT, et al.,                           )           **AND ORDER**
                                              )
          Defendants.                         )

**** **** **** ****

Plaintiff Robert O'Hair, an inmate confined at Northpoint Training Center in Burgin,

Kentucky, has filed a Complaint under 42 U.S.C. § 1983, alleging that Defendants Monty

Corbett, Matthew Reed, Michael Keffer, William Jackson, and the Winchester Police

Department violated his federal constitutional rights.  [Record No. 1]  O'Hair has also filed

several documents that amend the contentions in the Complaint.  [*See, e.g.*, Record Nos. 14;

47]  Specifically, he asserts a Fourth Amendment excessive force claim against the officers

and the entity defendant based on the events surrounding his arrest on February 4, 2015.

[Record No. 1, pp. 4−5]

On March 28, 2016, O'Hair filed pleading captioned "Dispositive Motion" in which he

attempts to explain why he is entitled to judgment in his favor.  [Record No. 50]  He

subsequently filed a motion for summary judgment.  [Record No. 63]  The defendants filed

their motion for summary judgment on March 28, 2016, as well.  [Record No. 51]  The

defendants' motion has been fully briefed, including a sur-reply by O'Hair [Record Nos. 52;

- 1 -

57; 65], whereas the plaintiff failed to file replies regarding his motions within the appropriate timeframe.  The three motions were referred to a United States Magistrate Judge for review and issuance of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  On July 8, 2016, Magistrate Judge Robert E. Wier recommended that the defendants' motion be granted and O'Hair's motions be denied.  [Record No. 71]  On July 20, 2016, O'Hair filed objections to the Recommended Disposition.  [Record No. 76]  Having conducted a *de novo* review of the portions of the Recommended Disposition to which O'Hair objects, *see* 28 U.S.C. § 636(b)(1)(C), the Court agrees with Magistrate Judge Wier and will grant summary judgment in favor of the defendants.

## I.

On February 4, 2015, O'Hair was incarcerated at the Clark County jail on charges of receiving stolen property.  [Record No. 51-2, p. 2]  Around 3:00 a.m., he escaped and went to his wife's residence.  [*Id.*, p. 3; Record No. 51-3, p. 1]  Upon notification of the plaintiff's location, the officers went to that residence at approximately 4:00 a.m., confirming with her that O'Hair was in the home.  [*Id.*, p. 7]  O'Hair admits that he went to the residence with the intent to overdose on drugs he kept stashed there.  [Record No. 51-2, pp. 6−7]  When O'Hair realized that the officers were outside the apartment, he began "eating" the drugs.  [*Id.*, pp. 4−5]  When the officers entered, he bolted the door, moved to the kitchen, and concealed himself behind a doorway or wall.  [*Id.*]

At that point, O'Hair heard the officers order him to show his hands.  [*Id.*, p 5]  Initially, the plaintiff did not comply because he was still "chewing on the dope." [*Id.*]  He also concedes

that he responded with "f--- you, I want to die."[1]  [*Id.*, p. 6]  Next, O'Hair reached into his pocket, where he pulled out cigarettes and a white and silver lighter with his right hand.  [*Id.*, pp. 5−6]  O'Hair already had a black cell phone in his left hand.  [*Id.*, p. 5]  After more commands to show his hands, O'Hair complied, sticking out his hands, which were holding those items.  [*Id.*, p. 6]  At that moment, Officer Reed fired a shot at O'Hair, allegedly believing the plaintiff had a gun.  [*Id.*; Record Nos. 51-3, p. 7; 51-6, p. 2]

The shot missed O'Hair, who retreated behind a refrigerator and stove, where he barricaded himself by placing the kitchen table in front of the window.  [Record Nos. 51-2, p. 9; 51-3, p. 8]  Officers then attempted to re-enter the kitchen, with Officer Reed warning that he was going to tase O'Hair.  [Record No. 51-3, p. 9]  And when he tased O'Hair, the plaintiff fell forward and hit his face on the stove; however, O'Hair was not fully incapacitated.  [*Id.*]  As a result, Officer Keffer used his taser on the plaintiff, who continued to resist arrest.  [*Id.*]  Next, Reed used the drive stun feature of the taser, which brought O'Hair to the ground, where he struck his head again.  [*Id.*]

O'Hair continued to resist arrest.  As Officer Corbett tried to handcuff him, Corbett claims that O'Hair shoved his hands under his face and chest.  [*Id.*]  The officers employed other maneuvers to subdue the plaintiff, such as kicks at his hands, with one kick striking O'Hair's face.  [*Id.*]  Corbett tased O'Hair a final time, and Keffer struck O'Hair on the legs with his baton.  [*Id.*]  At that point, the officers were able to handcuff O'Hair, and they allege

---

[1]     According to the officers, O'Hair also claimed to have a gun with which he intended to shoot the officers.  [Record No. 51-3]  The Court may consider this allegation in determining O'Hair's motions for summary judgment, but it may not consider this allegation in determining the defendants' motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

that they removed the taser probes and checked for trauma.  [*Id.*]  The parties dispute whether O'Hair was conscious at that point, but he was "unresponsive" upon arriving at the Clark Regional Medical Center.  [*Id.*, pp. 9−10; Record Nos. 50, p. 4; 50-1]

O'Hair pleaded guilty to escape, terroristic threatening, resisting arrest, and wanton endangerment as a result of the events of February 4, 2015.  [Record No. 51-2, p. 13]  He was sentenced to three years of imprisonment.  [*Id.*]  On April 10, 2015, O'Hair filed the present Complaint, asserting claims against the Winchester Police Department and Clark County Sheriff's Office, subsequently naming the individual officers.  [Record Nos. 1; 1-3, p. 2; 14]  The Clark County Sheriff's Office was dismissed from the action on July 23, 2015.  [Record No. 34]

O'Hair largely contends that he is entitled to judgment as a matter of law based on the severity of his injuries and the number of tases employed by the officers on February 4, 2015.  [Record Nos. 50, pp. 1−7; 63, pp. 1−5]  Conversely, the defendants argue that the force employed was not excessive under the circumstances presented and acknowledged by O'Hair.  [Record No. 55, p. 6]  Further, the officers assert that they are entitled to qualified immunity.  [Record No. 51, p. 1]

## II.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or

- 4 -

whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). With cross-motions for summary judgment, the Court evaluates each motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration. *Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 902 (6th Cir. 2010). For a movant bearing the burden of persuasion at trial, his burden is higher in that the evidence must be "so powerful that no reasonable jury would be free to disbelieve it." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). For a movant who does not bear the burden of persuasion at trial, he may either submit affirmative evidence negating an essential element of the other party's claim or demonstrate that the other party's evidence is insufficient to establish an essential element of the claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

## III.

The defendants argue that they did not violate O'Hair's constitutional rights on February 4, 2015, by employing excessive force. [Record No. 51-1, pp. 7−10] In addition, the officers contend that, even if they did violate his rights, they are entitled to qualified immunity because those rights were not clearly established. [*Id.*, pp. 11−13] The Court agrees

with the magistrate judge that the defendants did not violate O'Hair's Fourth Amendment rights[2] and that the officers are protected by qualified immunity. [Record No. 71, pp. 17−18]

Government officials performing "discretionary functions" are shielded from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (internal quotation marks and citation omitted). First, the Court determines whether the facts as pleaded "show the officer[s'] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the Court examines "whether the right was clearly established." *Id.* Once a defendant raises this defense, the plaintiff bears the burden of alleging facts demonstrating that the defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

"[I]ndividuals have a constitutional right to be free from excessive force during an arrest." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006). Excessive force is determined under the "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Court must balance the quality of the intrusion against the countervailing

---

2     As noted by the magistrate judge, it is undetermined whether O'Hair was a pre-trial detainee or a convicted person at the time of the events in question, although it appears more likely from the plaintiff's deposition that he was a convict. [Record Nos. 71, p. 8 n.10; 51-2, p. 2] The Eighth Amendment's excessive force doctrine applies to convicted individuals, and the Fourteenth Amendment applies to pre-trial detainees. *Gravely v. Madden*, 142 F.3d 345, 348−49 (6th Cir. 1998). Because both the Eighth and Fourteenth Amendment doctrines are less favorable to O'Hair than the Fourth Amendment doctrine, the Court has analyzed the claims under the Fourth Amendment out of an abundance of caution. *See Coley v. Lucas Cnty.*, 799 F.3d 530, 537−38 (6th Cir. 2015); *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (stating that "[a] substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the objective reasonableness" test of the Fourth Amendment) (internal quotation marks and citation omitted). The defendants references the Fourth Amendment standard in their briefs. [*See* Record No. 51-1, p. 6.]

governmental interests. *Id.* at 396. The Supreme Court has identified three factors that influence the analysis: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or others' safety; and (3) whether the suspect actively resisted arrest or attempted to flee. *Id.* An officer can be held liable for excessive force if he actively participated in the use of force, supervised the officer who used such force, or owed a duty of protection against the use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

The Court will first address whether the defendants violated O'Hair's right to be free from excessive force. Next, the Court will analyze whether that right was clearly established. It is helpful to divide the events surrounding Officers Reed's shot from the events involving the taser, kicks, and use of a baton.

### A.     Officer Reed's Shot

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tenn. v. Garner*, 471 U.S. 1, 11 (1985). However, resisting arrest, standing alone, does not constitute probable cause that a suspect poses an imminent danger of serious physical harm justifying the use of deadly force. *Id.* The inquiry is an "objective one based upon the 'information possessed' by the police officer involved." *Boyd v. Baeppler*, 215 F.3d 594, 600 (6th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). A shot at a suspect is justified where the officer has probable cause to believe the suspect has a gun that he intends to use. *See Hoffman v. Ruesch*, 936 F.2d 573 (table), 1991 WL 110387, *4 (6th Cir. 1991).

In other words, when an officer reasonably believes that a suspect is armed and poses a threat of serious physical harm to officers or other individuals, he may use deadly force. *See Estate of Hickman v. Moore*, 502 F. App'x 459, 466 (6th Cir. 2012) (affirming summary judgment in officer's favor where suspect's wife and daughter informed officer that suspect had threatened deadly force, suspect was not complying with orders to show his hands, and another officer had recently indicated the suspect had a gun). For example, where a child pointed an item perceived as a gun towards an officer, the officer reasonably used deadly force. *See Bell v. City of East Cleveland*, No. 96–3801, 1997 WL 640116, *3 (6th Cir. Oct. 14, 1997). In *Bell*, the "weapon" turned out to be a toy BB-gun. *Id.* at *1.

Here, the officers knew O'Hair was an escapee and had witnessed him attempting to flee. [Record Nos. 51-3, p. 7] Further, it is undisputed that O'Hair ignored at least some of their commands to show his hands. [Record No. 51-2, p. 5] Moreover, through his guilty plea, O'Hair admitted to threatening the officers. [*Id.*, p. 13] When he finally complied with the officers' orders, he had something black in one hand and something silver in the other hand, and he was showing only his hands because his body remained behind a wall. [*Id.*, pp. 5−6; Record No. 51-3, p. 11] Under those circumstances, it was reasonable for Officer Reed to believe that O'Hair was armed and posed a threat of serious physical harm to the officers and others in the area, like the plaintiff's wife. *See Estate of Hickman*, 502 F. App'x at 466; *Hoffman*, 1991 WL 110387, at *4. It is irrelevant that O'Hair ultimately did not have a weapon in his hands —what matters is the officer's reasonable belief at the time. *See Bell*, 1997 WL 640116, at *3.

O'Hair contends in his objections that, because he eventually complied with the orders to show his hands, Officer Reed's shot was unreasonable. [Record No. 76, p. 1] However,

O'Hair admits that he initially disobeyed the order. [Record No. 51-2, p. 5] That failure to comply, when combined with the other circumstances, gave Officer Reed probable cause to believe that O'Hair had a weapon and posed a serious physical threat to individuals in the area. Even if O'Hair claims that he did not, at first, have sufficient time to comply, his actions "strongly indicated his intentions were not innocent and compliant, but defiant and hostile." *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009). In any event, "the objective reasonableness of the detectives' conduct must be measured in light of what they actually observed in the circumstances confronting them, not in light of speculation that may arise with the benefit of hindsight." *Id.* The fact that O'Hair suddenly had a change-of-heart, sticking out his hands, which were holding items that could be perceived as guns, does not help his case. Because the undisputed facts[3] demonstrate that Officer Reed had probable cause to believe that O'Hair was armed and posed a serious physical threat, he did not violate the plaintiff's constitutional rights in firing a shot at him. *See Garner*, 471 U.S. at 11. For the same reasons, the other officers are not liable for any failure to protect the plaintiff from the shot.

But even if Officer Reed used excessive force against O'Hair by firing a shot at him, the officer is still not liable for the action because the right at issue was not clearly established. "An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he

---

[3]     As mentioned above, the officers allege that O'Hair also claimed to have a gun that he intended to use against the officers. That fact at least precludes entry of summary judgment in O'Hair's favor, although it may not be used in determining the defendants' entitlement to summary judgment. *See United States v. Wooten*, 689 F.3d 570, 575 (6th Cir. 2012) (phrase "I have a gun" can be sufficient to constitute a "threat-of-death").

was faced." *Solomon*, 389 F.3d at 175. For example, where a suspect held one hand in front of him at his waist while fleeing from officers and the plaintiffs presented no evidence to cast doubt on the defendant's belief that the suspect was armed and dangerous, the court held that the officer was entitled to qualified immunity with respect to the use of deadly force. *Savage v. City of Memphis*, 620 F. App'x 425, 428 (6th Cir. 2015).

Similarly, O'Hair has failed to cast doubt on Officer Reed's belief that O'Hair was holding a weapon and posed a serious threat. Although he points out that Officer Reed admitted in his answers to interrogatories that he saw what was in O'Hair's hands [Record No. 63, p. 4, *referring to* Record No. 51-6, p. 2], as the magistrate judge aptly notes, the interrogatory did not identify *when* Reed saw what was in O'Hair's hands. [Record No. 71, p. 15] Thus, even though Reed mistakenly believed O'Hair had a weapon, because that mistake was reasonable under the circumstances, he is entitled to qualified immunity with respect to that action. *See Solomon*, 389 F.3d at 175. Likewise, the other officers are entitled to qualified immunity with regard to any alleged failure to protect the plaintiff.

**B.     O'Hair's Arrest**

The parties' arguments primarily address what occurred after the gunshot. [*See, e.g.*, Record Nos. 50, pp. 1−3; 55, p. 10] "[I]t is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). "Active resistance includes 'physically struggling with, threatening, or disobeying officers.'" *Id.* (quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)). It also includes "refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Id.*

In *Rudlaff,* the court determined that the suspect actively resisted arrest by: (i) telling the officer he would not comply; (ii) puffing up his chest and staring down the officer; (iii) twice swinging his arms towards the officer; (iv) locking up his body; and (v) refusing to give the officer his hands for cuffing.  *Id.* at 642.  The court reasoned that a "reasonable police officer observing this scene in the heat of the moment did not need to give [the suspect] any more time to comply before tasing him." *Id.*

The facts of the present case indicate that the officers' actions were at least as reasonable as the officers' actions in *Rudlaff*, where the officers employed knee strikes and a taser.  First, O'Hair pleaded guilty to escape, terroristic threatening, resisting arrest, and wanton endangerment charges.  [Record No. 51-2, p. 13]  Therefore, he admitted that he actively resisted arrest and threatened the officers.  In his objections, O'Hair argues that his plea is not evidence of his resistance and threats because he only pleaded guilty to receive a lighter sentence.  [Record No. 76, p. 1]  But regardless of O'Hair's claims at the present moment, his plea is strong evidence that a reasonable jury would find his actions to constitute resisting arrest, as he made the admission under oath and subjected himself to incarceration without a trial.  *See, e.g.*, *Morrison v. Bd. of Trustees of Green Twp.*, 529 F. Supp. 2d 807, 818 (S.D. Ohio Nov. 29, 2007) (discussing *nolo contendere* pleas); *Walker v. Commonwealth*, No. 2008-SC-684-MR, 2010 WL 2025101, *4 (Ky. May 20, 2010).  In any event, the undisputed evidence demonstrates that O'Hair resisted arrest.

The police report indicates that, after the gunshot, O'Hair barricaded himself behind the refrigerator using a kitchen table.  [Record No. 51-3, p. 8]  And O'Hair admits as much. [Record No. 51-2, p. 9]  The plaintiff also admits to yelling obscenities at the officers and stating that he wanted to die.  [*Id.*, p. 6]  O'Hair was clearly resisting arrest.  *See Rudlaff*, 791

- 11 -

F.3d at 641.  After witnessing O'Hair attempt to flee, refuse to comply with commands to show his hands, and barricade himself behind a refrigerator, Officer Reed announced his intent to tase O'Hair, which he did.  [Record No. 51-3, p. 9]  Tasing a suspect under such circumstances is not excessive.  *See id.*

After the first tase, the defendants assert that O'Hair was not fully incapacitated, and O'Hair produces no evidence to the contrary.  [Record No. 51-3, p. 9]  Instead, he merely alleges that, if he hit his head while falling down, he must have been incapacitated.  [Record No. 63, p. 5]  That assertion does not necessarily follow.  The defendants' contentions are consistent with the taser merely partially incapacitating O'Hair.  Because O'Hair continued to resist arrest, two more tases were employed.  [Record No. 51-3, p. 9]  At that point, O'Hair allegedly prevented the officers from handcuffing him by attempting to keep his hands under his body, causing the officers to employ more forceful maneuvers, such as kicks, the use of a baton, and another tase.  [*Id.*]

Nowhere in the Complaint or Amended Complaints does O'Hair claim that he was not resisting arrest.  [*See* Record Nos. 1; 14; 47]  While O'Hair's motions and other filings often attempt to highlight discrepancies in the officers' reports and statements, O'Hair does not adduce any *evidence* to contradict their allegations that he was resisting arrest.  [*See, e.g.*, Record Nos. 50, p. 4; 63, p. 5]  Because the defendants have produced a wealth of evidence showing O'Hair's resistance, the burden is on O'Hair to produce evidence of sufficient disagreement to require submission to a jury.  *See Anderson*, 477 U.S. at 252.  O'Hair has failed to meet this burden, by affidavit or otherwise.[4]

---

[4]     Likewise, O'Hair's claim in his objections that he tried to "surrender" is not supported by actual evidence of record.  [Record No. 76, p. 1]

O'Hair takes issue in his objections with the officers' contention that he was placing his hands under his face and body because Officer Jackson admitted to stepping on O'Hair's hands.  [Record No. 76, p. 1]   However, the two pieces of evidence are not necessarily inconsistent with each other.  Officer Jackson could have stepped on O'Hair's hands while O'Hair was resisting, and O'Hair could have successfully removed his hands and continued to resist arrest.

Applying the *Graham* factors, the officers' repeated use of the taser, kicks, and baton were justified.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  O'Hair was in the process of committing a felony—escape. *See Graham*, 490 U.S. at 396; Ky. Rev. Stat. § 520.030.  Further, O'Hair both actively resisted arrest and attempted to flee.  *See Graham*, 490 U.S. at 396.  Moreover, his large consumption of drugs, yelling obscenities, threats, lack of fear for his life, and non-compliance with orders indicated that he posed a threat to the officers and others in the vicinity.  *See id.*  It was clearly reasonable for the officers to use the taser and other compliance techniques until O'Hair stopped resisting arrest and they were able to handcuff him.  *See Ruddlaff*, 791 F.3d at 641. While O'Hair argues that the officers' level of force, in and of itself, constitutes excessive force, the case law clearly rejects such an argument.  *See Williams v. Sandel*, 433 F. App'x 353, 362 (6th Cir. 2011) (involving baton strikes, pepper spray, and 37 ECD activations). [Record No. 50, p. 1]  For instance, the Court agrees with the magistrate judge that the parties' dispute over whether O'Hair was responsive at the end of the encounter makes no difference

under the circumstances.  *See id.* (explaining that "the injury itself does not dictate a finding

of excessive force").[5]  [Record No. 71, p. 14]

Even if the officers' actions were in violation of O'Hair's Fourth Amendment rights,

those rights were not clearly established.  *See Caie v. West Bloomfield Twp.*, 485 F. App'x 92,

95−97 (6th Cir. 2012) (stating that "escape of a dangerous criminal or the threat of immediate

harm" are "compelling justification[s]" for employing a taser); *Kijowski v. City of Niles*, 372

F. App'x 595, 600 (6th Cir. 2010) (explaining that it was not excessive for officers to tase an

individual who was actively resisting arrest).  As noted by the magistrate judge, in light of

these cases, there is no clearly established law that the officers' conduct was unreasonable for

the purpose of subduing an escapee actively resisting arrest.  [Record No. 71, p. 17 n.20]

C.      **Winchester Police Department**

"A defendant cannot be held liable under section 1983 on a *respondeat superior* or

vicarious liability basis."  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)

(citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)).  Instead, the

plaintiff must allege that a policy or custom of the defendant entity caused the deprivation at

issue.  *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).  A plaintiff may allege that a

custom of "inaction" caused the violation by identifying a pattern of unconstitutional conduct

or by asserting that the defendant did not adequately train the officials.  *See D'Ambrosio v.*

---

[5]      For this reason, while O'Hair objects to the magistrate judge's statement that the medical records O'Hair produced are not "authenticated," the validity of the medical records makes no difference in this case.  [Record No. 76, p. 2, *referring to* Record No. 71, p. 4]  Assuming they are valid and that O'Hair was not responsive at the hospital, the officers' actions were still reasonable under the circumstances.  Similarly, O'Hair's objection regarding the number of tases has no effect on the outcome of this case because the evidence shows that all tases were employed while O'Hair was actively resisting arrest for the purpose of handcuffing him.  *See Ruddlaff*, 791 F.3d at 641. [Record Nos. 76, pp. 3−5; 63, p. 2]

*Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014); *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

The magistrate judge properly determined that the Winchester Police Department is entitled to summary judgment because O'Hair has not even stated a claim for municipal liability under *Savoie*, 673 F.3d at 494.  [Record No. 71, p. 18 n.21]  Instead, O'Hair appears to rely on a vicarious liability theory.  Further, because there was no underlying constitutional violation, the claim against the entity defendant fails to survive summary judgment.  *See Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).

## IV.

The officers' actions on February 4, 2015, were reasonable in light of O'Hair's active resistance to arrest and the fact that he posed a threat of serious physical danger to the officers and others.  The Court agrees with the magistrate judge that they did not violate O'Hair's Fourth Amendment rights.  [Record No. 71, p. 18]  Further, the Court agrees that the officers are entitled to qualified immunity with respect to their actions.  [*Id.*, p. 17]  In addition, the entity defendant is not liable because there was no underlying constitutional violation and because O'Hair fails to allege a claim of municipal liability.  Consequently, summary judgment will be granted in favor of the defendants and denied with respect to the plaintiff.

Accordingly, it is hereby

**ORDERED** as follows:

1.       United States Magistrate Judge Robert E. Wier's Recommended Disposition [Record No. 71] is **ADOPTED** and **INCORPORATED** herein by reference

2.       Plaintiff Robert O'Hair's objections [Record No. 76] are **OVERRULED**.

3.      The plaintiff's dispositive motion and motion for summary judgment [Record Nos. 50; 63] are **DENIED**.

4.      The defendants' motion for summary judgment [Record No. 51] is **GRANTED**.

5.      All claims asserted in this action by O'Hair against Defendants Monty Corbett, Matthew Reed, Michael Keffer, William Jackson, and the Winchester Police Department are **DISMISSED**, with prejudice.

6.      This action is **DISMISSED** and **STRICKEN** from the Court's docket.

7.      A separate Judgment shall issue this date.

This 26th day of July, 2016.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge